IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-6 |
| LEWIS MOBELY (6) | |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This Order and Report and Recommendation addresses the following motions filed by Defendant Lewis Mobely:

–   Motion to Suppress Statements [Doc. 747]

–   Perfected Motion to Suppress In-Court Identifications Based on Suggestive Out-of-Court Identification Procedures by Government Witnesses [Doc. 748]

–   Motion to Sever Defendant [Doc. 749]

–   Motion to Suppress Evidence Resulting from Unlawful Search Warrant [Doc. 919]

–   Motion to Suppress Evidence Resulting from Arrest Pursuant to Unlawful [Arrest] Warrant [Doc. 920]

- Motion to Suppress Evidence Resulting From Unlawful Seizure of Cell Phone and Jacket, and Unlawful Search of Cell Phone [*Mobely I*[1] Doc. 113] and Motion to Suppress Evidence Resulting From Unlawful Search of Cell Phone Pursuant to a Warrant Dated April 24, 2015 [*Mobely I* Doc. 123], both of which have been adopted [*see* Doc. 921]

- Motion for Bill of Particulars [Doc. 968]

- Motion to Suppress Evidence Gathered Pursuant to the Stored Communications Act [Doc. 969]

- Motion for Accelerated Disclosure of *Jencks* Act and *Giglio* Materials [Doc. 975]

- Motion for Disclosure of Name and Location of Confidential Informants [Doc. 976]

The Court addresses the pending motions in the following order:  (1) the motions to suppress, (2) the motion to sever, (3) the motion for a bill of particulars, (4) the motion for accelerated disclosure, and (5) the motion for disclosure of confidential informants.  For the following reasons, it is **RECOMMENDED** that the motions

_____

[1] *Mobely I* refers to the prior federal criminal case against Mobely, *United States v. Mobely*, Crim. Action File No. 1:-13-cr-218-CAP-LTW, which was dismissed after Mobely was indicted in this case.

2

to suppress and the motion to sever be **DENIED** and it is **ORDERED** that the remaining motions be **DENIED**.

## I.    BACKGROUND

### A.    Background Facts

The following background facts are taken from evidentiary hearings held before Magistrate Judge Linda T. Walker in *Mobely I*.  This section provides an overview if the relevant facts and procedural history of the case.  Additional facts relevant to specific pending motions are discussed in greater detail in connection with the analysis of those motions.

On February 16, 2013, a shooting occurred inside a convenience store in northwest Atlanta.  [*Mobely I* Doc. 50 at 10, 13.]  The shooting allegedly occurred after the shooting victim, later identified as Jermaine Higgins,[2] said the word "Blatt" to a man standing outside the store, whom law enforcement believe to be Mobely.  [*Id.* at 23-25, 42.]  "Blatt" purportedly means "Blood love all the time," and it is considered to be a disrespectful term to members of the Gangster Disciples gang.  [*Id.* at 42.]  Mobely then allegedly followed Higgins into the store, had a

_____

[2] Higgins was referred to in the indictment in this case and elsewhere in the record by his initials; however, both parties have referred to him by his full name; therefore, the Court does the same here.

discussion with him, and then shot him twice. [*Id.* at 23-25.] Higgins survived the shooting and was taken to Grady Memorial Hospital. [*Id.* at 124.] The shooting was captured on surveillance video. [*Id.* at 11.]

On February 18, 2013, Investigator Pierre Joseph of the Atlanta Police Department visited Higgins at Grady. [*Mobely I* Doc. 50 at 29.] Investigator Joseph asked Higgins about his gang affiliation and told Higgins that the person who shot him had a Gangster Disciples jacket. [*Id.* at 74.] Investigator Joseph believes that he told Higgins that he had seen the video of the shooting. [*Id.*]

On February 20, 2013, Investigator Joseph returned to Grady along with Investigator Michael Young, and they showed Higgins a photo array that Investigator had created. [*Mobely I* Doc. 50 at 29, 32.] Higgins positively identified Mobely as the shooter. [*Id.* at 30, 33.]

On February 21, 2013, Investigator Joseph applied for and obtained five arrest warrants from a Fulton County magistrate authorizing the arrest of Mobely on charges of aggravated assault with a deadly weapon; aggravated battery; possession of a firearm during the commission of a felony; possession of a firearm by a convicted felon; and carrying a concealed weapon. [Doc. 920-1.] The U.S. Marshal Service Southeastern Regional Fugitive Task Force assisted with locating and arresting Mobely. [*Mobely I* Doc. 156 at 19.]

4

On February 22, 2013, police were conducting surveillance on Mobely at his apartment in anticipating of executing the arrest warrants. [*Mobely I* Doc. 156 at 24.] Police saw Mobely exit the apartment with his eight-year-old daughter K.B., and together they entered a minivan. [*Id.* at 8, 24-25.] Police followed the vehicle to a gas station, but before police could effectuate a take-down, Mobely left the gas station and drove onto I-20 in Atlanta. [*Id.* at 25-26.] Once on the expressway, police got into position to make a traffic stop and activated their blue lights. [*Id.* at 26-28.] The minivan "look[ed] like [it was] about to stop" but then drove away. [*Id.* at 28.] Mobely led police on a high-speed chase down the expressway and through a residential area and school zone at speeds of 70 or 80 miles per hour. [*Id.* at 29.] Police ultimately were able to force the minivan to spin out and block Mobely from driving off again. [*Id.* at 29-31.] Mobely was then arrested. [*Id.* at 31.] A jacket was recovered from the minivan, and law enforcement seized an LG cellular phone belonging to Mobely from K.B. that Mobely had given her moments before she got out of the vehicle. [*Mobely I* Doc. 113 at 1, 7; *Mobely I* Docs. 113-2, 113-3; *Mobely* Doc. 156 at 15, 17, 31.]

On February 22, 2013, Atlanta Police Department Detective M.A. Young obtained and executed a search warrant from a DeKalb County, Georgia, magistrate authorizing the search of 2771 White Oak Drive (the "White Oak Residence"), the

5

residence where Mobely picked up K.B. earlier in the day.  [Doc. 919-1 at 2-5.] Law enforcement reportedly discovered a shotgun and ammunition during the search.

On February 25, 2013, Detective William K. Murdock of the Atlanta Police Department applied for and obtained a search warrant for the LG cell phone from a Fulton County, Georgia, Superior Court Judge.  [*Mobely I* Doc. 113-2.]  On August 13, 2013, Detective Murdock applied for and obtained a second search warrant to seize and search the cell phone from Judge Walker.  [*Mobely I* Doc. 113-3.]  On April 24, 2015, FBI Special Agent Douglas S. Rambaud applied for and obtained a third search warrant for the phone from U.S. Magistrate Judge Russell G. Vineyard.  [*Mobely I* Doc. 123-1.]

**B.    Procedural Posture**

On May 28, 2013, a federal grand jury returned an indictment charging Mobely with two counts of possessing a firearm or ammunition while being a convicted felon.  [*Mobely I* Doc. 1.]  Mobely filed and litigated numerous pretrial motions that he has re-asserted in this the instant case, including motions to suppress the out-of-court identification, the jacket recovered at the time of the his arrest on February 22, the fruits of the search of the White Oak Residence, and the search warrants for the LG cell phone.  Judge Walker recommended that Mobely's

6

motion to suppress the out-of-court identification be denied, which the Honorable Charles A. Pannell, Jr., U.S. District Judge, adopted.  [*Mobely I* Docs. 67, 93.] Judge Walker also recommended that motion to suppress evidence resulting from the search of the White Oak Residence be denied.  [*Mobely I* Doc. 110.]  Judge Pannell adopted that recommendation as well and denied Mobely's motion to suppress.  [*Mobely I* Doc. 116.]

Judge Walker also recommended that Mobely's motion to suppress the use of the jacket recovered during the arrest be denied and that the motion to suppress evidence sized from the cell phone also be denied because Mobely failed to establish standing to challenge the search of the cell phone.  [*Mobely I* Doc. 135.] Judge Pannell adopted Judge Walker's recommendation concerning the jacket, but declined to adopt her recommendation regarding the cell phone without affording Mobely an evidentiary hearing on the issue of standing.  [*Mobely I* Doc. 147.]  On March 29, 2016, Judge Walker held an evidentiary hearing on the issue of standing. [*Mobely I* Doc. 156.]  But before the parties were able to provide post-hearing briefs, a federal grand jury returned the indictment in this case on April 28, 2016. [Doc. 1.]  The government then moved for dismissal of the indictment in *Mobely I*, which the court granted.  [*Mobely I* Docs. 157, 158.]

In the case currently pending before the Court, Mobely is charged with conspiracy to commit racketeering (Count One); attempted murder in aid of a racketeering enterprise (Count Two); use of a firearm in a crime of violence (Count Three); possession with intent to distribute cocaine (Count Four), and use of a firearm in a drug distribution felony (Count Five). [*See* Doc. 1.] The indictment alleges that Mobely was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). [*Id.* at 6, 8.] It is further alleged that during the time period relevant to this case Mobely founded and served on the HATE Committee and acted as an enforcer and clean-up crew for the Gangster Disciples.[3] [*Id.* at 13.]

---

[3] The indictment alleges that members of the Gangster Disciples are organized in geographic groups, each called a "count" or a "deck." [Doc. 1 at 2.] The indictment further alleges that each state has a "Chief Enforcer"—*i.e.*, someone who is responsible for enforcing the organization's codes, rules, and regulations. [*Id.* at 4.] The State Chief Enforcer is responsible for seeing that punishment is effectuated for Gangster Disciples members who violate gang rules and for ensuring that people who claim to be members of the Gangster Disciples are in fact members in good standing. [*Id.*] Each count also has a Chief Enforcer who is responsible for enforcing gang rules within that count. [*Id.*] Chief Enforcers command "enforcement teams" and "clean-up crews", which are groups Gangster Disciples members that are tasked with administering discipline, including assaults and killings. [*Id.*] The HATE Committee is allegedly a specially-named enforcement team. [*Id.* at 5.] According to the indictment, Mobely, codefendant Kevin Clayton, codefendant Donald Glass, and others founded the HATE

8

The indictment alleges that on February 16, 2013, Mobely, along with codefendants Carter Clayton, Donald Glass, Shauntay Craig, and others, were filming a music video featuring the Gangster Disciples in front of a neighborhood convenience store when Higgins walked in front of the camera wearing a red shirt and taunted the Gangster Disciples.  [Doc. 1 at 20.]  Perceiving that Higgins had insulted the Gangster Disciples, Mobely allegedly shot Higgins.  [*Id.*]  On or about April 30, 2013, Mobely admitted that he shot Higgins "because of the board," purportedly referring to the Gangster Disciples Board Members.[4]  [*Id.* at 21.]

The indictment alleges that on February 22, 2013, Mobely possessed a 12-gague shotgun, ammunition, and cocaine.  [Doc. 1 at 21.]

From at least December 2, 2013 through December 17, 2013, Mobely allegedly possessed a contraband cell phone while in federal custody.  [Doc. 1 at 25.]  He allegedly used the phone to contact Gangster Disciples members to discuss gang business.  [*Id.*]  It is also alleged that on or about December 3, 2013, Mobely

---

Committee, and co-defendant Alonzo Walton, who was acting as "governor of Georgia," approved the HATE Committee's existence and role.  [*Id.* at 18.]

[4] According to the indictment, Board Members are the highest ranking members of the Gangster Disciples, aside from the national leader of the organization.  [Doc. 1 at 3.]

ordered co-defendant Ronald McMorris to "whack" Higgins because Higgins had testified in federal court.  [*Id*.]

On January 14, 2014, while still in custody, Mobely allegedly assaulted two correctional officers by throwing a chemical solution in their faces and eyes.  [Doc. 1 at 42.]

The indictment also provides notice of enhanced sentencing as to Mobely. In Paragraph 136, the indictment alleges that Mobely and other co-defendants joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder, in violation of O.C.G.A. § 16-5-1.  [Doc. 1 at 41.]  In Paragraph 137, the indictment alleges that Mobely and other co-defendants "joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise manufactured, distributed, and possessed with the intent to distribute controlled substances including more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; more than one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; and more than five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; any of which constitutes a violation of Title 21,

10

United States Code, Section 841, Section 841(b)(1)(A), and Section 846[.]" [*Id.* at 42.]

## II. PERFECTED MOTION TO SUPPRESS IN-COURT IDENTIFICATIONS BASED ON SUGGESTIVE OUT-OF-COURT IDENTIFICATION PROCEDURES BY GOVERNMENT WITNESSES [748]

On March 24, 2017, Mobely filed a motion to suppress in-court identifications based on suggestive out-of-court identification procedures by government witnesses [Doc. 748]. This motion is substantively identical to a motion that he filed in *Mobely I*, which the parties fully briefed. [*See Mobely I* Doc. 23; *see also Mobely I* Docs. 17, 46, 61, 62, 64.] Judge Walker conducted two-day suppression hearing with respect to the motion. [*Mobely I* Docs. 50, 56.] Judge Walker recommended that the motion be denied, [*Mobely I* Doc. 67 at 3-21], and Judge Pannell adopted the recommendation without modification as the order of the Court, [*Mobely I* Doc. 93].

Counsel for Defendant Mobely and the government agreed that I may consider the filings related to this motion. Having considered the parties' briefs, the transcript of the evidentiary hearing, and the exhibits admitted into evidence, I readily conclude that the motion should be denied for the same reasons that Judge Walker set forth in her comprehensive and well-reasoned report and

recommendation.  Accordingly, I **RECOMMEND** that the Perfected Motion to Suppress In-Court Identifications Based on Suggestive Out-of-Court Identification Procedures by Government Witnesses [Doc. 748] be **DENIED**.

### III.   MOTION TO SUPPRESS EVIDENCE RESULTING FROM ARREST PURSUANT TO UNLAWFUL [ARREST] WARRANT [920]

#### A.   Background

Mobely moves to suppress evidence seized in connection with five arrest warrants that Investigator Joseph applied for and obtained from a Fulton County magistrate on February 21, 2013, authorizing the arrest of Mobely on charges of aggravated assault with a deadly weapon; aggravated battery; possession of a firearm during the commission of a felony; possession of a firearm by a convicted felon; and carrying a concealed weapon.  [Doc. 920-1.]  Prior to obtaining these warrants, Investigator Joseph had viewed the video of the shooting of Higgins on February 18, 2013.  [*Mobely I* Doc. 50 at 12.]  He had also twice visited Higgins at Grady, and on February 20, 2013, showed Higgins a photo array in response to which Higgins identified Mobely as the individual who shot him.  [*Id.* at 29, 52.]

With respect to each arrest warrant, Investigator Joseph executed an affidavit which identified the specific offense, the time, date, and place of occurrence of the offense, against whom the offense was committed (as appropriate), and a statement

12

describing the offense.  The affidavit for arrest on charges of aggravated assault with a deadly weapon is illustrative.  It provides as follows:

> Personally came Pierre Joseph, who on oath says that to the best of his/her knowledge and belief Lewis Elandrin Mo[be]ly (hereinafter the accused) between 02/16/2013 at 02:00 PM and 02/16/2013 at 02:00 PM, at 500 James P. Brawley Dr. NW, Atlanta, in FULTON county aforesaid, did commit the offense of AGGRAVATED ASSAULT WEAPON – Felony, 16-5-21 in that said accused did make an assault upon the person of Jermaine Higgins, with a HANDGUN, a deadly weapon, by shooting the victim once in the chest and once in the left inner thigh, said and this deponent makes this affidavit that a warrant may issue for his/her arrest.

[Doc. 920-1 at 1.]  The other four affidavits were similar in form.  [*See id.* at 3, 5, 7, 9.]

The arrest warrants each provided as follows:

> To any Sheriff, Deputy Sheriff, Coroner, Constable, Police Officer, Law Enforcement Officer or Marshal of said State
>
> **GREETING**:
>
> For sufficient causes made known to the Deputy Clerk of this Court (as authorized by Acts 1922, p. 207), you are therefore commanded to arrest the body of the said accused named in the foregoing affidavit, charged with [the offense that is the subject of the arrest warrant]; and bring him/her before me or some other judicial officer of this State, to be dealt with as the law directs, **HEREIN FAIL NOT**.

13

[Doc. 920-1 at 1, 3, 5, 7, 9.]

Mobely moves to suppress the fruits of the arrest, including a cell phone and a jacket, as well as "observations of Mr. Mobely and statements he made upon arrest." [Doc. 920 at 1.] Mobely argues that the arrest warrants and affidavits were totally devoid of facts supporting probable cause and merely stated that he committed certain crimes. [*Id.* at 1.]

The government responds that the arrest warrants were lawfully issued because the affidavits sufficiently demonstrated probable cause for the issuance of arrest warrants. [Doc. 1067 at 5-7.] The government also argues that even if the affidavits do not set forth probable cause, it was appropriate for the magistrate to hear oral testimony from Investigator Joseph, and the government offers to make him available at an evidentiary hearing. [*Id.* at 7.] The government alternatively argues that even if the arrest warrants were not lawfully obtained, Mobely's flight in response to the attempted traffic stop provided independent and intervening probable cause for his arrest. [*Id.* at 7-9.] The government also argues, in the alternative, that even if evidence was improperly seized, the good faith exception to the exclusionary rule apples. [*Id.* at 9-10.]

In his reply, Mobely concedes that Georgia law does not require the affidavit for an arrest warrant to set forth the probable cause for the arrest but asserts that

14

the magistrate judge must still determine that probable cause exists.  [Doc. 1113 at 1-2.]  Mobely maintains that the magistrate made no such determination and points out that the warrants are facially invalid because each states that it is being issued based on "sufficient causes" rather than "probable cause."  [*Id.*]

**B.    Analysis**

It is unnecessary to decide whether Investigator Joseph's affidavits sufficiently set forth probable cause for issuance of the arrest warrants because, even if the arrest warrants were not supported by probable cause, Mobely's arrest and the subsequent seizure of evidence was lawful because Mobely engaged in a new, distinct crime after law enforcement attempted to execute a traffic stop.[5]

---

[5] I am not entirely convinced that the affidavits in this case are facially sufficient to demonstrate probable cause for issuance of a warrant, at least in federal court.  The government cites Georgia state cases that seem to support the conclusion that the affidavits are sufficient under Georgia law; however, the Eleventh Circuit has held that an affidavit very similar to the ones in this case was, without more, insufficient to establish probable cause for an arrest warrant.  *See Garmon v. Lumpkin Cty., Ga.*, 878 F.2d 1406, 1408 (1989) (reversing the grant of a directed verdict to defendant in a 42 U.S.C. § 1983 case).  Specifically, in *Garmon*, the Circuit held that an affidavit which contained "neither information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circumstances surrounding the alleged commission of the crime" was inadequate.  *Id.* at 1408-09.  Here, the affidavits that Investigator Joseph prepared did not indicate how he had knowledge of the facts underlying the commission of the crimes.  But, since the Mobely's intervening act of leading police on a high-speed chase following an attempted traffic stop gave law enforcement probable cause to arrest him, the Court need not decide whether

15

In order to make a lawful warrantless arrest, the arresting officers must have probable cause for the arrest.  If an arrest is unlawful, evidence that was the direct product of the unlawful arrest should be suppressed.  *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).  Physical evidence or statements resulting from an unlawful seizure are inadmissible except when sufficiently attenuated from the seizure.  *See id*.  The government has the burden of proving that any taint from an illegal arrest and seizure has been purged.  *United States v. Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1983).  The factors relevant to determine whether the defendant's behavior was a product of the illegal police action include (1) the temporal proximity of the arrest and the defendant's response, (2) the presence or absence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.  *Id.* at 1015.

The Eleventh Circuit's decision in *Bailey* is on point here.  In *Bailey*, the defendant was stopped by a law enforcement officer at the Atlanta airport on suspicion that he was engaged in drug trafficking.  *Bailey*, 691 F.2d at 1011-12.  Defendant then fled and, in an effort to avoid recapture, struck the officer.  *Id.* at

---

the affidavits were facially sufficient to show probable cause for his arrest, nor is an evidentiary hearing necessary to determine what additional information Investigator Joseph provided to the magistrate.

1012.  The defendant was ultimately subdued and placed in handcuffs, and searches of his person revealed a large sum of cash, cocaine, and heroin.  *Id.*  The Eleventh Circuit held that the defendant was not entitled to suppression of the fruits of the search as an illegal arrest and search because the defendant engaged in new criminal conduct that gave law enforcement probable cause to arrest him.  The Court explained that "notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime."  691 F.2d at 1016-17.  In reaching this conclusion, the court made the practical observation that "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes that he might commit that have a sufficient causal connection to the police misconduct."  *Id.* at 1017.

Here, the evidence shows that after law enforcement attempted to effectuate a traffic stop, Mobely fled the scene and led police on a high-speed chase through a residential area and a school zone.  [*Mobely I* Doc. 156 at 29-31, 40.]  Like the defendant's actions in *Bailey*, Mobely's actions were closely connected to law enforcement's attempted traffic stop; however, his intervening actions also constituted new criminal activity (including reckless driving) that gave law enforcement probable cause to arrest him.  *See also United States v. Castillo*, 238

17

F.3d 424 (Table), 2000 WL 1800481, at *6, (6th Cir. Nov. 28, 2000) (high-speed flight from law enforcement constituted an intervening criminal act that purged alleged taint of supposedly unlawful detention).  Put somewhat differently, Mobely had no right, even if the initial attempted traffic stop was unlawful, to lead police on a high-speed chase in an attempt to elude capture.  He engaged in additional criminal conduct, which this Court readily concludes gave police probable cause to arrest him.

The third *Bailey* factor–the "purpose and flagrancy of the official misconduct"—also does not weigh in favor of suppression as there was no "official misconduct" here.  Under Georgia law, an arrest warrant affidavit is not required to demonstrate probable cause for the issuance of the warrant.  *Devier v. State*, 253 Ga. 604, 610 (1984).  Rather, Georgia law requires an affidavit for an arrest warrant for offenses other than theft, to include the following facts:

> (1)  The offense, including the time, date, place of occurrence, against whom the offense was committed, and a statement describing the offense; and

> (2)  The county in which the offense was committed.

O.C.G.A. § 17-4-41(a); *see also id.* § 17-4-40(a) (requiring that arrest warrants be issued based on probable cause either on the judge's own knowledge or on

information of others given to judge under oath); *id.* § 17-4-45 (prescribing form affidavit that, if substantially complied with, "shall in all cases be sufficient").

Each of the four arrest warrants at issue here complies with O.C.G.A. § 17-4-41(a), and substantially conforms to the form affidavit set forth in O.C.G.A. § 17-4-45.  It therefore stands to reason that an officer tasked with executing the arrest warrant could reasonably assume that probable cause existed for issuance of the arrest warrant, even if the affidavit, standing alone, did not set forth sufficient facts to establish probable cause.  In addition, by the time that Investigator Joseph presented the arrest warrants to the Fulton County magistrate, he had viewed the surveillance video showing Mobely allegedly shooting the victim and administered the photo array to the victim in the hospital.  Investigator Joseph therefore would have believed that that there existed a fair probability that Mobely had committed each of the offenses identified in the affidavits.  Excluding evidence under the circumstances of this case would not serve to deter police misconduct, as there was really was no police misconduct with respect to obtaining and executing the arrest warrants.  Thus, this factor militates against excluding the fruits of Mobely's arrest and subsequent search.

Accordingly, considering the factors set forth in *Bailey*, the Court concludes that the circumstances surrounding Mobely's arrest provide no basis for

19

suppressing the evidence seized after the arrest.[6]  I therefore **RECOMMENDED**

that Mobely's Motion to Suppress Evidence Resulting from Arrest Pursuant to

Unlawful [Arrest] Warrant [Doc. 920] be **DENIED**.

### IV.   MOTION   TO   SUPPRESS   EVIDENCE   RESULTING   FROM UNLAWFUL SEIZURE OF CELL PHONE AND JACKET, AND UNLAWFUL SEARCH OF CELL PHONE [*Mobely I* Doc. 113] AND MOTION   TO   SUPPRESS   EVIDENCE   RESULTING   FROM UNLAWFUL   SEARCH   OF   CELL   PHONE   PURSUANT   TO   A WARRANT DATED APRIL 24, 2015 [*Mobely I* Doc. 123][7]

Mobely moves to suppress all evidence that resulted from what was, in his

view, an unlawful seizure and search of an LG Cellular Phone and unlawful seizure

of a jacket from the minivan that he was driving when he was arrested on February

22, 2013.  [*Mobely I* Doc. 113.]  Mobely also moves to suppress evidence obtained

pursuant to a search warrant dated April 24, 2015, issued by Judge Vineyard.

[*Mobely I* Doc. 123.]

On December 14, 2015, Judge Walker recommended that both motions to

suppress be denied.  [*Mobely I* Doc. 135.]  With respect to the jacket, Judge Walker

concluded that the jacket was in plain view in the minivan and that there was a fair

---

[6] In light of this conclusion, I need not and do not address the government's alterative argument that the good faith exception to the exclusionary rule applies.

[7] These motions were filed in *Mobely I* case and Mobely moved to adopt them here.  [Docs. 921, 978 at 4.]

probability that the jacket was evidence of a crime, and, thus, the search was justified as a search incident to arrest.  [*Id.* at 8-9.]  As to the search of the cell phone, Judge Walker concluded that Mobely failed to demonstrate that he had a reasonable expectation of privacy in the phone and therefore recommended that the motion to suppress be denied as it related to the phone.  [*Id.* at 14-15.]  Similarly, with respect to the April 24, 2015 warrant, Judge Walker recommended that the motion to suppress evidence resulting from the search pursuant to that warrant be denied because Mobely failed to demonstrate his standing to challenge the search of the phone.  [*Id.* at 15-16.]

Judge Pannell adopted Judge Walker's recommendation to deny the motion to suppress the jacket.  [*Mobely I* Doc. 147 at 1-2.]  With respect to the search of the cell phone, however, Judge Pannell declined to adopt the recommendation and directed Judge Walker to conduct a hearing on whether Mobely has standing to challenge the seizure and searches of the cell phone.  [*Id.* at 2.]

On March 29, 2016, Judge Walker held an evidentiary hearing on the issue of standing.  Mobely's minor daughter testified at the hearing, and based on her testimony, the Court found that Mobely had established standing with regard to the cell phone.  [*Mobely I* Doc. 156 at 18.]

21

Mobely has renewed his motions to suppress the seizure and search of the jacket and the cell phones in this action. [Doc. 921.] The government opposes the motions. [Doc. 1065] Mobely has filed a reply in support of his motions. [Doc. 1114.]

### A.      Seizure and Search of the Jacket

The Court has considered the record in *Mobely I* and agrees that the jacket was lawfully seized and searched incident to arrest. The jacket, which resembled the jacket worn in the video of the shooting of Higgins, was in plain view and that law enforcement reasonably believed that the jacket was evidence of criminal activity. [*Mobely I* Docs. 113-2 at 2, 121 at 6.] Accordingly, for the reasons set forth in Judge Walker's report and recommendation and adopted by Judge Pannell, it is recommended that the motion to suppress be denied as it relates to the jacket.

### B.      Seizure and Search of the Cell Phone

Mobely advances several arguments as to why the seizure and search of the cell phone was unlawful:  (1) law enforcement had no probable cause to believe that the cell phone seized from Mobely's daughter belonged to Mobely [*Mobely I* Doc. 113 at 7; Doc. 1114 at 3]; (2) the search of the cell phone was warrantless because the time to execute the warrant expired by the time that agents conducted the search [*Mobely I* Doc. 113 at 8]; (3) the affidavits used to support the search

22

warrants for the phone failed to establish a nexus between Mobely's alleged criminal activity and the cell phone [*Mobely I* Doc. 113 at 9-10, *Mobely I* Doc. 123 at 5-9]; (4) the affidavits supporting the warrant falsely stated that the cell phone was recovered from Mobely and that at the time of his arrest, he was found to be in possession of a firearm [*Mobely I* Doc. 113 at 10-13, *Mobely I* Doc. 123 at 8-9]; and (5) since the affidavit used to obtain the April 24, 2015 warrant relied on information that was obtained from a warrantless search of the cell phone, those allegations must be stricken, which leaves the affidavit unsupported by probable cause [*Mobely I* Doc. 123 at 9-10].

The government responds that Mobely lacks standing to challenge the seizure of the phone from his daughter. [*Mobely I* Doc. 121 at 7-8.] Next, the government contends that the search and seizure of the cell phone was valid pursuant to state and federal warrants, and that at all times the government accessed the phone, it was secured in law enforcement's custody. [*Id.* at 8-13.] The government also argues that the affidavit established a nexus between Mobely and the seized telephone, and, alternatively, evidence seized from the telephone should not be suppressed under the good faith exception to the exclusionary rule. [*Id.* at 13-18.] The government additionally argues that any factual errors in the affidavits were immaterial because probable cause exists to support the issuance of the

23

warrants even if the information Mobely contends is false is excised.  [*Id.* at 18-24.]  In response to Mobely's motion to suppress the April 24, 2015 search warrant, the government similarly argues that any erroneous information is immaterial and that the affidavit for the warrant established a nexus between Mobely and the cell phone.  [*Mobely I* Doc. 127 at 6-19.]

I first address the lawfulness of the seizure of the cell phone and, for the reasons discussed below, conclude that law enforcement validly seized the phone based on the exigency of loss or destruction of evidence.  I then address the constitutionality of the search of the phone and conclude that law enforcement lawfully searched the phone.

### 1. Exigent Circumstances Justified the Warrantless Seizure of the Cell Phone.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The ultimate touchstone of the Fourth Amendment is reasonableness.  *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2482 (2014) (quotation omitted).  In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.  *Id.*  One such exception is the "exigency exception" under which law enforcement may lawfully seize evidence prior to

24

issuance of a warrant if there is probable cause to believe that it holds contraband or evidence of a crime and if the "exigencies of the circumstances demand it." *United States v. Place*, 462 U.S. 696, 701 (1983).  This doctrine may apply in situations where it is not feasible or advisable for law enforcement to obtain a warrant, such as where (1) there is a danger that the suspect will flee or escape, (2) evidence may be destroyed or lost, or (3) law enforcement is in hot pursuit of a fleeing suspect.  *United States v. Echevarria*, 238 F. App'x 424, 425 (11th Cir. 2007).

The tests for both the probable cause determination and the exigent circumstances determination are objective.  *United States v. Franklin*, 694 F.3d 1, 9 (11th Cir. 2012).  Probable cause exists when the totality of circumstances shows "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  An exigency exists if, based on the totality of the circumstances, the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured.  *Franklin*, 694 F.3d at 7; *see also Gennusa v. Canova*, 748 F.3d 1103, 1115 (11th Cir. 2014).  The burden of proving the existence of probable cause and exigent circumstances lies with the Government.  *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).  .

25

Applying these principles here, the Court concludes, based on the totality of the circumstances, that the warrantless seizure of the cell phone was justified in order to prevent the loss or destruction of evidence.  Before officers even attempted to arrest Mobely, law enforcement was aware of his possible connection to the Gangster Disciples organization and reasonably believed that a cell phone would contain evidence of criminal activity.  Detective Murdock attested to the following facts in his affidavit in support of the February 25, 2013, search warrant for the phone:   law enforcement had determined that Mobely was a member of the Gangster Disciples; he was observed in the video of the February 16, 2013 shooting talking on a cell phone before the shooting; it is common for gang members to maintain contact with other members via cell phone and maintain photographs, notes, and calendars that document gang activity; it is also common for cell phones to contain contact information of other individuals associated with the gang; and Mobely's Facebook page indicated that he uploaded photographs from a mobile device.  [*Mobely I* Doc. 113-2 at 5-6.]  These circumstances amply demonstrate probable cause for law enforcement to believe that the cell phone recovered from Mobely contained evidence of criminal activity.

Mobely contends that law enforcement did not have probable cause to believe that the cell phone belonged to him because law enforcement physically

seized it from his eight-year-old daughter.  Citing articles on WebMD and the in the New York Times, Mobely argues that many eight-year-olds have cell phones, and it was therefore unreasonable for law enforcement to assume that the cell phone belonged to Mobely.  [Doc. 1114 at 3.]  He further argues that even if the phone did not belong to his daughter, it could have belonged to someone other than Mobely.  [*Id.*]

Mobely's arguments are not persuasive.  While it is conceivable that an eight-year-old could own her own cell phone or that the cell phone in K.B.'s possession belonged to someone other than her father, common sense dictates that it is also possible (if not most likely) that the phone belonged to Mobely and that he gave it to his daughter in an attempt to impede police from seizing the device. The Court agrees with the government that such a conclusion is the most reasonable explanation for how K.B. came to possess the phone.

The Court also finds that law enforcement had good reason to fear that if the phone was left with a minor child—or even later handed over to another person— the phone or its contents would be lost or destroyed.  *Cf. Riley*, 134 S. Ct. at 2486 (noting that it was "sensible" for petitioners to concede that law enforcement could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant).  Mobely asserts that there was no evidence that K.B. was

attempting to flee with the phone.  That argument misses the mark.  The danger that evidence would be lost or destroyed arose from the fact that K.B., a child, had possession of the phone.  It was entirely reasonable for officers to assume that a child could not be trusted to maintain potential evidence of criminal activity.  This conclusion is all the more reasonable given Mobely's conduct in leading police on a high-speed chase in an obvious attempt to avoid arrest.  It was also reasonable for the officers to have believed that Mobely may have given instructions to K.B. to take action to prevent the phone from being seized.

In sum, the Court concludes that that it was reasonable for law enforcement to fear that unless the cell phone was seized, the device itself or information on it, would be destroyed or removed.  Accordingly, the Court finds that there was a compelling need for law enforcement to seize the cell phone and that the seizure was justified based on exigent circumstances.[8]

---

[8] In light of this conclusion, I do not address the government's alternative argument that the seizure of the phone was incident to the lawful arrest of Mobely. [*See* Doc. 1065 at 10-13.]

### 2.     The Search of the Phone

#### a.     Whether the Searches Were Unlawful Because They Occurred After the Time to Execute the Warrants Expired

Mobely argues that the searches of LG cell phone were warrantless because the searches occurred outside the time period during which law enforcement was permitted to execute the warrants.  Each of the three search warrants for the cell phone authorized law enforcement to seize and search the cell phone within a specific time period.  The February 25, 2013 warrant authorized law enforcement to "enter, search and seize" the cell phone within 10 days; the August 13, 2013 warrant authorized executed on or before August 27, 2013 (a period of 14 days), and the April 24, 2015 warrant similarly authorized execution on or before May 8, 2015, also a period of 14 days.  [*See Mobely I* Doc. 113-2 at 1; *Mobely I* Doc. 113-3 at 1; *Mobely I* Doc. 123-1 at 1]. Mobely argues that the government downloaded files from the phone on April 8, 2013 and April 18, 2013, and then again on October 8, 2013—time periods outside the ten and fourteen-day windows for execution. [*Mobely I* Doc. 113 at 5, 8.]

The Court finds Mobely's argument to be without merit.  Federal Rule of Criminal Procedure 41(e)(2)(A)(i) provides that warrants must command officers to execute the warrant within a specified time no longer than 14 days.  Rule 41

29

further provides that a warrant seeking electronically stored information "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information," and "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B).  The Rule further provides that "The time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review."  Fed. R. Crim. P. 41(e)(2)(B).  As other judges on this Court have observed, "the fourteen-day limitation does not apply to later off-site copying or review of electronically stored information."  *United States v. Ilonzo*, No. 1:12-CR-276-SCJ-GGB, 2015 WL 5827598, at *22 (N.D. Ga. Oct. 6, 2015) (Brill, M.J.), *adopted at* *3-4 (Jones, J.)

The decision in *Ilonzo* is persuasive.  In that case, this Court held that the government's search of the defendants' computers more than 14 days after issuance of a search warrant phones was lawful under Rule 41 because "the computers were already in the possession of the Drug Enforcement Agency at the time of the application and by that fact were seized within fourteen days of the October 9 search warrant."  *Ilonzo*, 2015 WL 5827598, at *4.  Similarly, in the case at bar, Mobely's cell phone was within the possession of law enforcement at the time agents applied for each of the warrants here.  Also, similar to the instant case, the

warrant in *Ilonzo* did not "otherwise specify" when the data had to be copied or reviewed. *Id.* Accordingly, even if searches occurred after the deadline to execute the warrants passed, there was no violation of Rule 41.

But even if there were a violation of Rule 41, suppression would still not be an appropriate remedy. The Fourth Amendment does not require that search warrants contain expiration dates. *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir.1993); *United States v. Harvey*, No. 1:15-CR-53-TWT-RGV, 2015 WL 9685908, at *14 (N.D. Ga. Nov. 30, 2015), *report and recommendation adopted*, 2016 WL 109984 (N.D. Ga. Jan. 8, 2016). The requirement that a warrant have an "expiration date" is instead a creature of Rule 41, which as noted above, provides that a warrant must command officers to execute it within a specific time not to exceed 14 days after it is issued. Fed. R. Civ. P. 41(e)(2)(a)(i). In analyzing whether a violation of Rule 41 warrants suppression of evidence in absence of a clear constructional violation, courts consider whether "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Loyd*, 721 F.2d 331, 333 (11th Cir. 1983) (quotation omitted).

Here, Mobely has not demonstrated a constitutional violation.  In addition, both of the factors in *Loyd* weigh against suppression.  Mobely does not argue nor has he demonstrated that he has been prejudiced by the timing of the search.  In addition, there is no evidence that law enforcement intentionally and deliberately disregarded the deadline for executing the warrant.  To the contrary, the record suggests that the government was experiencing technical difficulties in accessing the information on the phone.  Detective Murdock submitted the phone to the Atlanta Police Department forensics unit on February 27, 2013, but the forensics unit was unable to unlock the phone and recover all the stored data.  [*Mobely I* Doc. 123-1 at 8.]   Detective Murdock later learned that the FBI might have the technology to unlock the phone.  [*Id*.]  On August 13, 2013, he obtained the second warrant authorizing the search of the phone, and on August 14, 2013, the phone was submitted to the FBI-CART.  [*Id*. at 9.]  FBI technicians were able to analyze an SD card in the phone, but they were unable to unlock the phone.  The phone was then shipped to the FBI Digital Forensics Analysis Section in Quantico, Virginia; however, no analysis was performed until after the April 24, 2015 search warrant was issued.  [*Id.*]  This sequence of events shows that law enforcement encountered technical difficulties in attempting to access the phone.  Moreover, probable cause for the search continued to exist throughout the entire period.  *See Harvey*, 2015

32

WL 9685908, at *15 (concluding that probable cause continued to exist after expiration of 14-day period).  In sum, Mobely has not shown any prejudice, there is no evidence that the government acted in bad faith, and the delay did not diminish probable cause; therefore, suppression is not warranted under the circumstances of this case.

### b.      Mobely's Challenge to the Warrant Affidavits

Mobely next argues that the August 13, 2013 and April 24, 2015 search warrants are invalid because the affidavits supporting each failed to establish a nexus between Mobely's alleged criminal activity and the phone.  [*Mobely I* Doc. 113 at 9-10; *Mobely I* Doc. 123 at 5-9.]  With respect to the affidavit supporting the August 13, 2013 warrant, Mobely points out that the affidavit contains two references that suggest the phone was seized from him:  (1) paragraph 4 states that "During the course of the arrest of Mobely, one (1) LG Cellular Phone . . . was recovered" and (2) paragraph 9 states that "the affiant believes that there is probable cause that the [cell phone] obtained from Mobely at his arrest contains evidence of his association with [the Gangster Disciples], which is the direct motivation for the shooting that he is charged with committing."  [*Mobely I* Doc. 113-3 at 5, 7.] Mobely contends that those statements are misleading and false in that police did not recover the phone from him.  Rather, the phone was in the possession of K.B.

33

[*Mobely I* Doc. 113 at 10.]  Mobely also asserts that the affidavit falsely states in paragraph 4 that "at the time of his arrest, Mobely was also found to be in possession of a firearm." [*Mobely I* Doc. 113-3 at 5.]  Mobely asserts that he did not possess a weapon of any kind when he was arrested, nor was a weapon recovered from the minivan.  [*Mobely I* Doc. 113 at 10.]

With respect to the April 24, 2015 warrant, Mobely similarly asserts that the Agent Rambaud's supporting affidavit falsely stated that the phone was "seized from [Mobely's] person" when in fact the phone was seized from K.B.  [*Mobely I* Doc. 123 at 7.]

Mobely also argues that he is entitled to a *Franks* hearing concerning the veracity of Detective Murdock's and Agent Rambaud's affidavits.  He argues that the August 13, 2013 warrant was invalid because Detective Murdock falsely insinuated that the cell phone was recovered from Mobely and also falsely stated that at the time of the arrest, Mobely was in possession of a firearm.  [*Mobely I* Doc. 113 at 12-13.]  Similarly, with respect to the April 24, 2015 warrant, Mobely asserts that Agent Rambaud falsely stated that the cell phone was "seized from his person." [*Mobely I* Doc. 123 at 8.]

The government responds that both affidavits sufficiently show probable cause and if there were factual errors in the affidavits, the errors were immaterial.

[*Mobely I* Doc. 121 at 13-16, 18-24; *Mobely I* Doc. 127 at 7-16.]  The government also asserts that the evidence should not be suppressed under the good faith exception to the exclusionary rule.  [*Mobely I* Doc. 121 at 16-18; *Mobely I* Doc. 127 at 17-19.]

### i.      The Warrant Affidavits Establish Probable Cause

Mobely's challenge to the warrants appears to be predicated entirely on purported inaccuracies in the affidavits.  Whether those errors affect the validity of the warrants is analyzed under *Franks v. Delaware*, which is discussed in the next section.   But just viewing the four corners of the warrant applications, and accepting as true the statements contained therein, the Court readily concludes that probable cause to search the cell phone was established in both affidavits.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."  U.S. Const. amend. IV.  In considering an application for a search warrant, the judicial officer's task is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *Gates*, 462 U.S. at 238.  "A search warrant is supported by probable cause if the supporting affidavit establishes 'a

connection between the defendant and the location to be searched; . . . a link between the location and criminal activity; and . . . the informant's veracity and basis of knowledge.'" *United States v. Joseph*, 709 F.3d 1082, 1099 (11th Cir. 2013) (alterations in original) (quoting *United States v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002)).

A reviewing court examining a challenge to a search warrant applies a different standard, under which it accords "great deference" to the judicial officer's finding of probable cause. *Joseph*, 709 F.3d at 1093 (quoting *Gates*, 462 U.S. at 236). The reviewing court must ask whether the judicial officer had a substantial basis for concluding that probable cause existed. *Id.*; *see also Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (*per curiam*) ("[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."); *United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994) ("[R]eviewing courts lend substantial deference to an issuing magistrate's probable cause determinations."). When a search is conducted pursuant to a warrant, the defendant bears the burden to show that the warrant is invalid. *United States v. Lockett*, 533 F. App'x 957, 965 (11th Cir. 2013); *United States v. Hinton*, 113 F. Supp. 3d 1277, 1292 (N.D. Ga. 2015).

36

Here, each of the warrant applications that Mobely challenges explained that on or about February 22, 2013, Mobely was arrested on state court warrants charging him with aggravated assault, being a felon in possession of a firearm, and participation in criminal street gang activity; that the warrants were issued subsequent to an investigation by the Atlanta Police Department in which Mobely was identified as a suspect in a shooting, and that during the course of the arrest of Mobely, the cell phone was recovered.  [*Mobely I* Doc. 113-3 at 5; *Mobely I* Doc. 123-1 at 6.]  The affidavits further state that it is common for members of a gang, including the Gangsters Disciples, to use cell phones to communicate with each other and that they often use the devices to take photographs of themselves and other members engaging in criminal activity, which they post to social media.  [*Mobely I* Doc. 113-3 at 7; *Mobely I* Doc. 123-1 at 7.]  The affidavit in support of the August 13, 2013 warrant application further stated that Mobely and other members of the Gangster Disciples were seen in photographs posted to social media depicting them posing with firearms and "other illegal items." [*Mobely I* Doc. 113-3 at 7.]  The affidavits also connect the cell phone recovered from the arrest to the alleged criminal activity.  Each affidavit alleges that the cell phone was recovered in connection with Mobely's arrest and that he was using the phone.  Viewing these

37

facts in totality, the Court readily concludes that the warrants establish a nexus between the cell phone and criminal activity.

### ii.        Mobely Is Not Entitled to a *Franks* Hearing

Mobely next argues that he is entitled to a *Franks* hearing concerning the veracity of Detective Murdock's and Agent Rambaud's statements in their affidavits.

Affidavits supporting arrest warrants are presumptively valid.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  A defendant may challenge a facially sufficient affidavit, however, if he can show that it contains misrepresentations or omissions that were knowingly or recklessly made.  *Id.* at 171.  To be entitled to relief, a defendant must show both (1) that the alleged misrepresentations or omissions were knowingly or recklessly made and (2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for the issuance of the warrants.  *United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001).  Based on the second requirement, a defendant is not entitled to a hearing unless he shows that but for the falsified facts there would not have been probable cause to issue the warrant.  *Franks*, 438 U.S. at 171-72; *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990).  It is appropriate, therefore, for a court to analyze a *Franks* motion by removing the

allegedly tainted information and inserting any alleged material omission, and then denying the motion if the affidavit, as amended, would nonetheless establish probable cause.  *United States v. Kapordelis*, 569 F.3d 1291, 1309-10 (11th Cir. 2009).

Detective Murdock's statements that the LG cell phone was "recovered" "during the course of the arrest of Mobely" and his description of the phone as having been "obtained from [him] at his arrest" were not false.  The phone was, in fact, recovered during his arrest and the phone belonged to him.  The fact that the phone was in the hands of his minor daughter at the time law enforcement seized it is also immaterial.  If anything, had Detective Murdock disclosed that the phone had been taken from the daughter, that would have provided stronger probable cause because it shows that Mobely may have had the intent to impede law enforcement from obtaining the device.

Similarly, Mobely had not made a sufficient preliminary showing that Agent Rambaud's statement that during the course of Mobely's arrest the LG cell phone was "seized from his person" was made deliberately or with reckless disregard for the truth.  It is likely that this error was an innocent, especially since it appears that Agent Rambaud was simply recounting what Detective Murdock disclosed in his earlier affidavit.  And, again, had Agent Rambaud correctly stated that the phone

39

was seized from Mobely's eight-year-old daughter, that would have bolstered the reasonable conclusion that the cell phone contained evidence of criminal activity. Accordingly, any misstatement in the affidavits concerning Mobely's possession of the cell phone was not "material."

As for Detective Murdock's statement that a gun was in Mobely possession at the time of his arrest, this statement creates the false impression that Mobely had a firearm on his person at the time of his arrest.  But that misstatement is not material because even when the references to possession of a firearm are excised from the affidavit, the affidavit still provided a reasonable basis to believe that the phone contained evidence of criminal activity.  As noted above, Detective Murdock stated that it is common for members of the Gangsters Disciples to use cell phones to communicate with each other and that they often use the devices to photograph criminal activity and post it to social media.  [*Mobely I* Doc. 113-3 at 7.]

In sum, Detective Murdock's and Agent Rambaud's affidavits establish probable cause to search the cell phone, and none of the misstatements or omissions are material.  Accordingly, the warrants were not obtained in violation of *Franks*,

and Mobely's motion to suppress evidence obtained pursuant to the cell phone warrants should be denied.[9]

### C.    Summary

For the foregoing reasons, it is **RECOMMENDED** that Mobely's Motion to Suppress Evidence Resulting From Unlawful Seizure of Cell Phone and Jacket, and Unlawful Search of Cell Phone *[Mobely I* Doc. 113] and Motion to Suppress Evidence Resulting From Unlawful Search of Cell Phone Pursuant to a Warrant Dated April 24, 2015 [*Mobely I* Doc. 123], both of which have been adopted in Doc. 921, be **DENIED**.

## V.    MOTION TO SUPPRESS STATEMENTS [747]

Mobely moves to suppress statements that he gave to law enforcement following his arrest on February 22, 2013. [Doc. 747] The government has advised the Court that it will not use those statements at trial in this case. Accordingly, it is **RECOMMENDED** that the motion to suppress statements be **DENIED AS MOOT**.

---

[9] Because the prior searches were lawful, Mobely's final argument—that the affidavit used to obtain the April 24, 2015 warrant relied on information that was obtained from a warrantless search of the cell phone—is also without merit.

41

## VI.   MOTION TO SUPPRESS EVIDENCE RESULTING FROM UNLAWFUL SEARCH WARRANT [919]

### A.   Background

Mobely moves to suppress evidence seized during a search of the White Oak Residence on the grounds that the search warrant authorizing the search was not based on probable cause.  [Doc. 919 at 5.]

On February 22, 2013, Atlanta Police Department Detective M.A. Young obtained a search warrant from a DeKalb County, Georgia, magistrate authorizing the search of the White Oak Residence.  [Doc. 919-1 at 2-5.]  Detective Young's affidavit supporting the application for the search warrant stated in relevant part as follows:

> On February 15, 2013 at approximately 1:00pm at 500 James P. Brawley Jr. Drive NW, Atlanta, Fulton County a subject walked into the Yari Convenience Store.  While inside the victim [Higgins] was shot three times, twice in the stomach and once in the right femur.  The victim was transported to Grady Hospital where he is currently being treated for his injuries.  The case was assigned to zone 1 criminal investigation division the lead investigator on the case is Pierre Joseph APD case number 13-047-1373. The actual crime was captured on video surveillance and during the course of our investigation we were to determine a possible suspect, Lewis Mobley dob 7/16/1977.  While investigating the suspect Lewis Mobley we were able to determine that he may be in a gang called "Gangster Disciples".  While viewing the video surveillance suspect Mobley has several gang

42

identifying features such as wearing a black and grey jacket with "GD" in a six point star, he has six point star under his right eye, and several "GD" tattoos.  On his facebook page under the name "Adamsville Hard Head" he identifies himself a Gangster Disciple and his seen flashing hand signals to represent the Gangster Disciple gang.  On February 20, 2013 Lewis Mobley was positively identified by the victim Jermaine Higgins as the person who shot him. Through further investigation we were able to determine Lewis Mobley place of residence of 2771 White Oak Drive, Decatur, Dekalb County.

[Doc. 919-1 at 5.]

**B.    Analysis**

**1.    Suppression Based on Eyewitness Identification**

Mobely first contends that because the victim's identification of him provided part of the factual basis for the search warrant, and because the identification should be suppressed as an improperly suggestive identification procedure [*see* Doc. 748], the warrant is defective.  [Doc. 919 at 6.]  As discussed above, the Court concludes that Mobely's challenge to the eyewitness identification is without merit; thus, Mobely's argument that the warrant lacked probable cause because it relied on improper eyewitness identification likewise fails.[10]

---

[10] Judge Walker reached this same conclusion in *Mobely I*, [*see Mobely I* Doc. 110 at 2-3], which Judge Pannell adopted [*see Mobely I* Doc. 116].

43

### 2.    Eyewitness Based on Purported Lack of Nexus Between Criminal Offense and Residence

Mobely next argues that the affidavit submitted in support of the warrant lacked probable cause because it failed to establish a nexus between Mobely's alleged criminal activity and the residence. [Doc. 919 at 6-10.] This issue was also litigated in *Mobely I*, and the Court rejected Mobely's challenge. [*See Mobely I* Docs. 110, 116.] Specifically, Judge Pannell, in adopting Judge Walker's report and recommendation in full, concluded that:

> [t]he affidavit included extensive details that Mobely shot an individual and was a member of a gang. The affidavit also alleged that officers had concluded through investigation that 2771 White Oak Drive was Mobely's place of residence. Together, this information forms a sufficient basis for a probable cause finding. Based on the nature of the alleged criminal activity, there was a fair probability that evidence of the crime—weapons and gang clothing—would be found at 2771 White Oak Drive. While Mobely contends that the allegation that he resided at 2771 White Oak Drive is conclusory, the court concludes this allegation was sufficient to establish a nexus.

[*Mobely I* Doc. 116 at 4.]

The Court agrees with Judge Pannell's previous ruling that probable cause existed for the search of the White Oak Residence. "Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion

44

that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Kapordelis*, 569 F.3d at 1310 (quoting *Gates*, 462 U.S. at 238).  "Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'"  *Id.* (quoting *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999)).  The affidavit need not allege that the illegal activity occurred at the residence, but "'the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity.'"  *Id.* (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).

The affidavit alleges that facts that establish probable cause to believe that Mobely was associated with the Gangster Disciples and that he was involved in the shooting of Higgins.  Common sense tells us that a person suspected of criminal activity "tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained" and that one's residence is such a place.  *Kapordelis*, 569 F.3d at 1310 (quotation omitted).  Accordingly, probable cause existed to authorize the search of the residence.

45

### 3.     Mobely's Request for a *Franks* Hearing

### a.     The Parties' Arguments

Next, Mobely argues that he is entitled to a *Franks* hearing[11] because law enforcement officers did not advise the issuing magistrate that they had developed evidence from other sources that Mobely lived at two other possible locations and that the only fact connecting Mobely to the White Oak Residence was that they had observed him there briefly on the day of his arrest.  [Doc. 919 at 12.]  Mobely further asserts that law enforcement compounded the omissions by stating that "through further investigation we were able to determine Lewis Mobely['s] place of residence of 2771 White Oak Drive, Decatur, De[K]alb County" without offering any evidence to support the conclusion.  [*Id.* at 12-13.]  According to Mobely, ample other evidence demonstrates that he resided at least two other locations and that his wife, Latoya Battles, resided at the White Oak Residence. [*Id.* at 4-5; Docs. 919-2 at 2, 919-4 at 2, 919-5 at 2, 919-6 at 2, 919-7 at 3, 919-8 at 2, 919-9 at 2.]

Mobely additionally argues that law enforcement omitted from the warrant that Mobely had thrown the gun used to commit the aggravated assault offense out

---

[11] Mobely did not raise a *Franks* challenge in *Mobely I*.

of the window during the high-speed chase on which he led law enforcement.  [Doc. 919 at 13.]

The government responds that Mobely is not entitled to a *Franks* hearing because he has offered no facts sufficient to demonstrate that Detective Young intentionally or recklessly included false statements in the affidavit or that those statements affected probable cause.  [Doc. 1055 at 9.]  The government also argues that Mobely has not shown that the alleged omissions of information were material. [*Id.* at 9-10.]  Regarding the alternative addresses, the government points out that Detective Young relied on information from other investigators that Mobely had exited the White Oak Residence earlier that day with a small child, got into a minivan registered to the address, and then drove away in the minivan with the child.  [*Id.* at 10.]  As to Mobely's argument about the gun, the government contends that Mobely's assumption that there could be but only one firearm "is without basis in the record, or reason."  [*Id.* at 11.]  In addition, the government submits, the affidavit sought authorization to search the residence for more than just a single firearm, but also ammunition, a holster that may have been used to conceal the forearm, and gang paraphernalia.  [*Id.*]

In reply, Mobely asserts that there is no evidence that Mobely resided at the White Oak Residence with Ms. Battle, other than officers' observing him on the

day of arrest taking his daughter there to change clothes after he picked her up from

school.  [Doc. 1112 at 1.]  He also argues that the record does not support the

government's assertion that Detective Young learned from other officers that

Mobely had been traced to the residence and was last seen leaving the residence

immediately prior to fleeing police.  [*Id.* at 2.]  Mobely also asserts that the

omission of other addresses Mobely had used was material.  [*Id.*]  Finally, with

respect to the firearm, Mobely points out that there is no suggestion that there were

multiple guns involved and, in any event, the warrant is overbroad by authorizing

the search for any weapon.  [*Id.* at 3.]

### b.      Analysis

As explained above, a defendant is entitled to a *Franks* hearing where he

"makes a substantial preliminary showing that a false statement knowingly and

intentionally, or with reckless disregard for the truth, was included by the affiant in

the warrant affidavit" and that "the allegedly false statement is necessary to a

finding or probable cause."  *Franks*, 438 U.S. at 155-56.  Moreover, a defendant's

allegation of knowing or reckless falsehood must be accompanied by an offer of

proof, including affidavits or other reliable statements, or a satisfactory explanation

for the absence of such proof.  *Id.* at 171.

48

Here, Mobely has not made the required preliminary showing for a *Franks* hearing.  He has not made a substantial showing that Detective Young made a false statement, either deliberately or with reckless disregard for the truth that law enforcement had determined that Mobely resided at the White Oak Residence. Mobely rightly acknowledges that, on the day of his arrest, law enforcement observed him at the White Oak Residence, and he left there with his eight-year old daughter in a minivan.  [Doc. 919 at 3-4; *see also Mobely I* Doc. 156 at 24-25, 35.] Moreover, Mobely does not direct the Court to any authority that would require an officer to independently verify facts related to him by other police officers before the facts could be included within an affidavit in support of an application for search warrant.   To the contrary, "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."   *United States v. Sparks*, 806 F.3d 1323, 1337 (11th Cir. 2015) (quotation omitted), *cert. denied* 136 S. Ct. 2009 *and* 137 S. Ct. 34 (2016); *see also United States v. Campbell*, 193 F. App'x. 921 (11th Cir. 2006) (noting that defendant failed to point to authority "that requires a police officer to verify independently facts related to him by other police officers before including the facts in an affidavit in support of a warrant").

49

As for the purported omission of information indicating that Mobely may have lived elsewhere, even if that information had been included in the affidavit, it would not have undermine the "fair probability" established by the other evidence in the affidavit that Mobely was residing at the White Oak Residence.  Similarly, the purported omission that Mobely had thrown a gun out of the window of the minivan while he was fleeing from the police is not material.  As a matter of common sense, it is not necessarily the case that the gun Mobely discarded was the one that he allegedly used in the assault.  In addition, probable cause certainly existed for other evidence related to firearms, including ammunition and other paraphernalia.

Accordingly, the Court finds that Mobely has not satisfied his burden of demonstrating that the search warrant affidavit contained material omissions or false and misleading representations to warrant a *Franks* hearing, and he has not shown that the purported omission of information about his other addresses or the discarded gun undermined the probable cause established by the other evidence in the affidavit.  *See Kapordelis*, 569 F.3d at 1309-10.

### C.    Summary

For the foregoing reasons, it is **RECOMMENDED** that Mobely's Motion to Suppress Evidence Resulting from Unlawful Search Warrant [Doc. 919] be **DENIED**.

### VII.   MOTION TO SUPPRESS EVIDENCE GATHERED PURSUANT TO THE STORED COMMUNICATIONS ACT [969]

Following the pretrial conference relating to Mobely, the Court entered an order directing Mobely to file a perfected motion to suppress evidence pursuant to the stored communications act on or before July 24, 2017. [Doc. 978 at 4.] Mobely has not filed a perfected motion. Accordingly, it is **RECOMMENDED** that Mobely's Motion to Suppress Evidence Gathered Pursuant to the Stored Communications Act [Doc. 969] be **DENIED**.

### VIII.  MOTION TO SEVER DEFENDANTS [749]

### A.    The Parties' Arguments

Mobely moves for severance under Rule 14 due to prejudicial spillover. [Doc. 749 at 11-12.] He argues that his role in the alleged RICO conspiracy is limited as compared to the alleged activities of his other co-defendants. [*Id.*] He specifically points out that the indictment alleges nine homicides, nine different shootings, three robberies, 24 discrete act of drug trafficking, and hundreds of thousands of dollars of fraud; whereas Mobely is charged in connection with just

51

one shooting and one instance of cocaine possession.  [*Id.*]  He further points out that he was incarcerated during most of the time alleged in the indictment.  [*Id.* at 12.]

Mobely additionally argues that severance is appropriate because it is not clear whether the HATE Committee, of which Mobely is charged with being a member, had an agreement to form a conspiracy with other members of the Gangster Disciples.  [Doc. 749 at 12.]  He contends that he "may be swept in the conspiratorial net, despite not being a member of the Gangster Disciples."  [*Id.*]

The government responds that joinder is proper here because Mobely is charged with being a participating member of the Gangster Disciples and a founding member of the HATE Committee.  [Doc. 1017 at 6.]  The government proffers that evidence at trial will show that he shot a minor in the chest because he believed the victim insulted the Gangster Disciples, that he ordered the same victim be "whacked" in retaliation for testifying in federal court and participating in a drug conspiracy while carrying a firearm.  [*Id.*]

## B.    Analysis

Federal Rule of Criminal Procedure 8(b) provides that joinder of defendants is proper "if they are alleged to have participated in the same . . . series of acts or transactions constituting an offense or offenses."  To meet the "same series of acts

52

or transaction" requirement of Rule 8(b), the government must demonstrate that the acts alleged are united by substantial identity of facts or participants; however, there is no requirement that each participant participate in all acts or even know the other participants' roles in the alleged activities. *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992).

It is well-established that joinder is proper where, as here, the indictment charges multiple defendants with participation in a single conspiracy. *See United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985). The general rule is that defendants indicted together should be tried together, especially in conspiracy cases. *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009). "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).

To the extent that Mobely contends that he has been improperly joined as a defendant because he was merely a member of the HATE Committee, but not the Gangster Disciples, that argument is without merit. Rule 8(b) is a pleading rule, and courts look to the indictment to determine whether joinder is proper under that

53

rule. *See United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Melvin*, 143 F. Supp. 3d 1354, 1363 (N.D. Ga. 2015). Here, the indictment alleges that Mobely was a member of the Gangster Disciples as well as the HATE Committee, and that he was involved in offenses in furtherance of a racketeering conspiracy. Accordingly, the Court concludes that Mobely has been properly joined as a defendant in this case.[12]

Because joinder is proper under Rule 8(b), the Court turns to Mobely's contention that he should be severed due to prejudicial spillover. Federal Rule of Criminal Procedure 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Eleventh Circuit has explained that "[s]everance . . . is warranted only when a defendant demonstrates that a joint trial will result in 'specific and compelling prejudice' to his defense." *Liss,* 265 F.3d at 1228 (citation

---

[12] *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004), which Mobely cites in his brief, is inapplicable here as the court did not address issues of severance.

omitted). "Compelling prejudice occurs when the jury is unable 'to separately appraise the evidence as to each defendant and render a fair and impartial verdict.'" *Id*. (quoting *United States v. Meester*, 762 F.2d 867 (11th Cir.1985)). Cautionary instructions to the jury are presumed to adequately safeguard against prejudice. See *Lopez*, 649 F.3d at 1235 (cautionary instructions to the jury "ordinarily will mitigate the potential spillover effect of evidence of a co-defendant's guilt").

The Court is not persuaded that the nature of Mobely's involvement in the alleged conspiracy warrants severance under Rule 14. Mobely's concern that a jury will be unable to sift through the evidence at trial and make an individual determination of guilt as to him is a concern in virtually any multi-defendant conspiracy case where the participants have disparate levels of participation. As the Eleventh Circuit has explained, the general rule favoring joinder of defendants who have been indicted together applies to coconspirators, even if one defendant had a minimal level of participation in the conspiracy. *United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance."). Whatever risk there may be can likely be cured through limiting instructions to the jury. *See Zafiro*, 506 U.S. at 539. Accordingly, at this point, the Court concludes that Mobely has not

55

demonstrated that he would suffer such compelling prejudice to mandate severance.

For the foregoing reasons, it is **RECOMMENDED** that Mobely's Motion to Sever Defendants [Doc. 749] be **DENIED** at this time. It bears mentioning, however, that severance is within the discretion of the trial judge, who must ultimately balance the efficient and orderly presentation of the case with the possibility of prejudice to defendants and the ability to cure such prejudice with instructions. This is a complex case involving many defendants and issues may arise as this matter moves toward trial that may justify another look at severance of this and other defendants for trial. Although I recommend denying the motion at this stage in the proceedings, the trial judge may, of course, revisit the question of severance closer to trial. *See United States v. Alcindor*, No. 1:05-CR-0269-TWT-CCH, 2005 WL 8148993, at *5 (N.D. Ga. Dec. 7, 2005) (denying motion for severance but noting that severance is within the province of the trial judge), *report and recommendation adopted*, 2006 WL 8426658 (N.D. Ga. Mar. 10, 2006).

## IX.   MOTION FOR BILL OF PARTICULARS [968]

### A.   The Parties' Arguments

Mobely requests a bill of particulars that provides information about the following eleven categories:

1. In paragraph 16 of page 8, the indictment alleges that Mr. Mobley joined the Gangster Disciples no later than 2009. Specifically, when does the government contend Mr. Mobley join the gang and what affirmative act does the government believe evidenced the joinder?

2. In paragraph 2 of the Overt Acts, page 18, the Indictment alleges that Mr. Mobley and others "founded HATE Committee as an enforcement and clean-up crew." When did the HATE Committee form, how did the HATE Committee form, and who are its original members?

3. In paragraph 18, page 21, the indictment alleges that Mr. Mobley possessed a 12-guage shotgun, ammunition, and cocaine. What is the government's theory regarding how this alleged possession furthered the conspiracy?

4. In paragraph 20, page 21, the indictment alleges that Mr. Mobley "admitted that he shot J.H. 'because of the board,' presumably referring to the Gangster Disciples Board Members. To whom was this alleged admission made and what is the basis of the government's conclusion that 'because of the board' refers to the Gangster Disciples Board Members. Furthermore, what is the context of the alleged admission and where is it alleged to have taken place?

5. In paragraph 38, page 25, the indictment alleges that Mr. Mobley "possessed a contraband cellphone while in federal custody that MOBLEY used to contact fellow Gangster Disciples members to discuss gang business." Which members does the government allege Mr. Mobley contacted using the contraband cellphone, what business was allegedly discussed, and how does any possible conversation affect the object and purpose of the conspiracy?

57

6. In paragraph 38, page 25, the indictment alleges that Mr. Mobley "possessed a contraband cellphone while in federal custody that MOBLEY used to contact fellow Gangster Disciples members to discuss gang business." Which members does the government allege Mr. Mobley contacted from the contraband cellphone, what business was allegedly discussed, and how does any possible conversation affect the object and purpose of the conspiracy.

7. In paragraph 42, page 26, the indictment alleges that Mr. Mobley "assaulted two correctional officers by throwing a chemical solution in their faces and eyes." How do each of these alleged assaults relate to the object and purpose of the conspiracy?

8. In the Sentencing Enhancement section, paragraph 136, page 41, the indictment alleges Mr. Mobley's sentence can be enhanced because he was involved in an enterprise engaged in acts involving murder.  With respect to Mr. Mobley, are the date or dates of the acts involving murder referenced in paragraph 136, and names of participants involved in the murder(s) or names of victim or victims.  Also, specifically, on what date does the government contend that Mr. Mobley joined this enterprise?

9. With respect to paragraph 137, page 42, the indictment alleges that Mr. Mobley's sentence can be enhanced because he was involved with the enterprise to manufacture, distribute, and possess with the intent to distribute controlled substances.  Are there any dates outside of those alleged in the indictment that the government contends Mr. Mobley committed any acts that may subject him to a sentencing enhancement.

10. Whether Mr. Mobley is a member of the enterprise who was enriched through various criminal conduct

alleged in the Indictment, and, if so, what Mr. Mobley received, how much, and when he received it.

11. Whether Mr. Mobley ever provided financial aid or assistance to a gang member charged with or incarcerated for gang-related activities.

[Doc. 968 at 3-7.]

The government responds that each of the requests is without merit. [Doc. 1002 at 9-11.] The sole additional information that the government provides is (1) with respect to the timing of Mobely's admission that he shot Higgins was made on April 30, 2013 during a jail call from Mobely to "Chi Baby" and (2) with respect to whether Mobely provided financial aid and assistance to a gang member charged or incarcerated for gang-related activities, the documentary evidence shows that members paid dues and other funds into the enterprise, some of which was used to assist incarcerated or charged members. [*Id.* at 10-11.]

### B.    Analysis

Federal Rule of Criminal Procedure 7(f) explains that:

The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

59

Fed. R. Crim. P. 7(f).  The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (citation omitted).  A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial.  *See United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973).  "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).

With regard to category 1—Mobely's request for the date and other details regarding when he allegedly joined the Gangster Disciples—the Court finds that the indictment provides sufficient detail to inform him of the charges against him. *See United States v. Reid*, No. 3:09-CR-312-J-34TEM, 2010 WL 2653229, at *2 (M.D. Fla. July 2, 2010) (denying request for bill of particulars to specify date when alleged conspiracy was formed and the date on which each defendant joined conspiracy where indictment provided the purpose of the alleged conspiracy, the

participation of the defendant in the conspiracy, and the overt acts that defendant allegedly committed, as well as approximate dates of activity).

Categories 2, 3, 4, 5, 6 (which is a duplicate of category 5), and 7 seek detail regarding the alleged overt acts in which he was allegedly involved.  Overt acts, however, are not elements of a RICO conspiracy.  *See Salinas v. United States*, 522 U.S. 52, 63 (1997); *see United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (denying motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies), *report and recommendation adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017).  As such, Mobely "is not entitled to an accounting of the 'overt acts' he committed in furtherance of [the charged conspiracy]."  *Henley*, 2017 WL 2952821, at *16; *see also United States v. Coleman*, No. 1:07-CR-233-ODE-RGV, 2010 WL 11507843, at *7 (N.D. Ga. Feb. 24, 2010), *report and recommendation adopted*, 2010 WL 11515338 (N.D. Ga. May 18, 2010) ("A bill of particulars cannot be used to ferret out additional overt acts not listed in the indictment, as long as the indictment alleges the required number of overt acts under the statute being charged.").

Categories 8 and 9 seek further detail regarding the sentencing enhancement provisions in the indictment.  Although the notice provisions do not set out the

specifics actions that Mobely allegedly undertook or the name of the murder victim, the indictment itself contains detail regarding the alleged murder and drug trafficking enterprise. The Court is satisfied that, with respect to the notices of enhanced sentencing, the government has provided sufficient information to enable Mobely to understand the government's theory.  Additional detail is not warranted under Rule 7(b) and is not necessary for him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy if later prosecuted for the same offense.

Category 10, which seeks information about whether and how Mobely was enriched by the enterprise, is not properly the subject of a bill of particulars.  *See United States v. Victor Teicher & Co.*, 726 F. Supp. 1424, 1446 (S.D.N.Y. 1989) (denying motion for bill of particulars seeking, *inter alia*, an accounting of the amount by which the defendant was enriched by the alleged conspiracy).

Finally, with respect to category 11, the government responds that it believes that members of the alleged enterprise provided financial assistance to charged or incarcerated gang members through dues and other funds paid into the enterprise. No further information is required.

For the above reasons, Mobely's Motion for Bill of Particulars [Doc. 968] is **DENIED**.

### X.   MOTION FOR ACCELERATED DISCLOSURE OF *JENCKS* ACT AND *GIGLIO* MATERIALS [975]

Mobely moves the Court to order the government to disclose all *Jencks* Act and *Giglio* material be made available at least four months before trial because the discovery in this case is "overwhelming."  [Doc. 975 at 1.]

With respect to *Jencks* Act material, the government responds that the Court is not authorized to compel the government to disclose such material early.  [Doc. 1016 at 1-2.]  The government is correct.  The *Jencks* Act plainly requires that a witness statement be produced only after the witness testifies.   18 U.S.C. § 3500(b). [13]  There is no authority for the Court to grant an early release or disclosure of that material.  *See United States v. Jordan,* 316 F.3d 1215, 1227 n.17, 1251 & n.78 (11th Cir. 2003); *United States v. Jones,* No. 1:05-CR-617-WSD, 2007

---

[13] The *Jencks* Act provides in relevant part as follows:

> **After a witness called by the United States has testified on direct examination**, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the **witness has testified**. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b) (emphasis added).

WL 2071267, at *14 (N.D. Ga. July 19, 2007) ("The *Jencks* Act materials . . . are not subject to disclosure until the government witness testifies at trial on direct examination, or earlier if the government agrees."), *adopted at* *3-4.[14]

With regard to *Giglio*, the government correctly points out that "a defendant does not generally have a right to early disclosure of impeaching information," and here, the government's "agreement to abide by its *Brady*, *Jencks* and *Giglio* obligations . . . [is] sufficient." *United States v. Pineda*, No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012), *adopted by* 2012 WL 2907447, at *1 (N.D. Ga. July 16, 2012) (citation omitted). The government also objects to producing *Giglio* material because early disclosure may endanger the safety of witnesses.  The government specifically points to the nature of the acts alleged in the indictment, including retaliation against witnesses.  [Doc. 1016 at 4.]

The government has the better argument.  The Court's pretrial scheduling order directs the government to provide all materials and information in compliance with its obligations under *Giglio*.  [Doc. 272 at 6.]  The scheduling order further provides that a party can request a modification of this standard ruling by filing a

---

[14] The government represents that the cooperating witnesses are expected to testify at trial and that it will provide *Jencks* Act material pertaining to witnesses around 14 days before the witness testifies.  [Doc. 1016 at 3.]

particularized motion for relief.  [*Id.* at 5.]  Here, Mobely's sole reason for seeking accelerated disclosure of *Giglio* materials is that discovery is "overwhelming" and there is no real indication as to why four months' time is required.  Moreover, the government has indicated that it will provide *Jencks* Act material approximately 14 days before the witness testifies, and presumably, the government intends to disclose any *Giglio* materials at that time as well, if not earlier.  Absent a more particularized showing as to why *Giglio* material is needed four months in advance of trial, the Court will deny the motion.

Accordingly, the Court **DENIES** Mobely's Motion for Accelerated Disclosure of *Jencks* Act and *Giglio* Materials [Doc. 975].

## XI. MOTION FOR DISCLOSURE OF NAME AND LOCATION OF CONFIDENTIAL INFORMANTS [976]

On July 11, 2017, Mobely filed a motion for disclosure of the names, addresses, and other identifying information for each of the confidential informants in this case.  [Doc. 976.]  He also requests that he be given access to the confidential informant(s) once their identities are made known.  [*Id.*]  Specifically, Mobely argues that the disclosure of this information is important to his ability to prepare for trial.  [*Id.* at 4-5.]  He also proposes that disclosure be made solely to counsel for defendant with "reasonable limitations on revealing the identity of the witnesses

65

and potential witnesses." [*Id.* at 5.]  He further requests that the Court conduct an "appropriate review of the government's claimed interest" in maintaining the secrecy of this information.  [*Id.*]

It is well-established that the government has a limited privilege to withhold the identity of law enforcement informants.  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement."  *Id.*  But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the trial court may require disclosure.  *Id.* at 60-61.  In balancing these interests, the Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony."  *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991).  Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's interest in nondisclosure."  *United States v. Razz*, 240 F. App'x 844, 847 (11th Cir. 2007) (citing *Gutierrez*, 931 F.2d at 1490).

66

The concerns in *Roviaro* are generally inapplicable where the government intends to call the informant as a witness at trial.  *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness."); *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *United States v. Pineda*, No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012), *adopted at*, 2012 WL 2907447 (N.D. Ga. July 16, 2012).  Here, the government has indicated that it intends to call the confidential informant relating to the charges against Mobely as a witness during the trial and will disclose the identity of the informant prior to the trial and provide any related *Jencks* Act, *Brady*, and *Giglio* materials related to the confidential informant.  [Doc. 997 at 6-7.]  In light of this representation, the Court will not require the government to disclose the identity of such confidential informant at this time.

The Court additionally concludes that Mobely has not met the second *Roviaro* factor—*i.e.*, a direct relationship between his defense and the probable testimony of the informant.  The burden is on the defendant to show that the informant's testimony would significantly aid in establishing an asserted defense. *United States v. Johnson*, --- F. App'x ---, 2017 WL 2954570, at *1 (11th Cir. July

11, 2017) (citing *Gutierrez*, 931 F.2d at 1491). "Mere conjecture about the possible relevance of the testimony is insufficient to compel disclosure." *Id*.

Mobely generally avers that he would like to have access to the confidential informant to prepare for trial. [Doc. 976 at 4.] This is insufficient. Mobely has not indicated what information he believes that he would obtain from the confidential informant or why it would materially support his defense. In fact, Mobely does not specify what defense that might be.

For the foregoing reasons, *Roviaro* does not require disclosure of the confidential informant's identity at this time. Mobely's Motion for Disclosure of Name and Location of Confidential Informant [Doc. 976] is therefore **DENIED**.

## XII.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the following motions be **DENIED**:

– Motion to Suppress Statements [Doc. 747];

– Perfected Motion to Suppress In-Court Identifications Based on Suggestive Out-of-Court Identification Procedures by Government Witnesses [Doc. 748];

– Motion to Sever Defendants [Doc. 749];

68

- Motion to Suppress Evidence Resulting from Unlawful Search Warrant [Doc. 919];

- Motion to Suppress Evidence Resulting from Arrest Pursuant to Unlawful [Arrest] Warrant [Doc. 920];

- Motion to Suppress Evidence Resulting From Unlawful Seizure of Cell Phone and Jacket, and Unlawful Search of Cell Phone [*Mobely I* Doc. 113] and Motion to Suppress Evidence Resulting From Unlawful Search of Cell Phone Pursuant to a Warrant Dated April 24, 2015 [*Mobely I* Doc. 123], both of which have been adopted [see Doc. 921]; and

- Motion to Suppress Evidence Gathered Pursuant to the Stored Communications Act [Doc. 969]

It is **ORDERED** that the following motions be **DENIED**:

- Motion for Bill of Particulars [Doc. 968]

- Motion for Accelerated Disclosure of Jencks Act and Giglio Materials [Doc. 975]; and

- Motion for Disclosure of Name and Location of Confidential Informants [Doc. 976].

69

There are no matters pending for Defendant Mobely (6), and the Court has not been advised of any impediments to the scheduling of a trial as to this defendant.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**[15]

**IT IS SO ORDERED, RECOMMENDED AND CERTIFIED** this 26th day of October, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[15] Since matters pertaining to Mobely's codefendants still are pending, the District Court is not required to place Mobely's case on the trial calendar at this time.  18 U.S.C. § 3161(h)(6).